**PORTER, Admx. v NEW YORK CENTRAL RD. CO.**

Ohio Appeals, 2nd Dist, Franklin Co.

No. 3076. Decided Feb. 20, 1940.

John D. Gardner, Steubenville. and C. G. L. Yearick, Newark, for plaintiff-appellant.

Richard T. Rector, Columbus, for defendant-appellee.

## OPINION

By HORNBECK, PJ.

This is an appeal on questions of law from a judgment in behalf of defendant entered upon an instruced verdict at the conclusion of plaintiff's testimony in chief at the trial of the cause. The action was for damages for wrongful death of plaintiff's decedent, claimed to have been caused by the negligence of defendant in the operation of a locomotive on its tracks in what is known as the West Columbus yard.

Six specifications of negligence were assigned in the petition: Failure to give warning to plaintiff's decedent of the approach of the engine; operating the locomotive without sufficient lights; failing to maintain a proper lookout; failing to see or discover plaintiff's decedent upon the tracks; failure to exercise ordinary care for decedent after defendant knew of the presence of plaintiff's decedent upon the tracks.

Plaintiff alleges that at the time of the death of her decedent, who was in the employ of the Baltimore & Ohio Railroad Company, said company operated its trains over the tracks of defendant company at the place where decedent was struck, by virtue of a subsisting lease between the predecessors of defendant and The Baltimore & Ohio Railroad Company.

Plaintiff further claimed that her decedent as an employee of the Baltimore & Ohio Railroad Company was properly on the premises and at the place where he was struck at the time he was killed.

The answer of the defendant admitted the joint operation of its trains with The Baltimore & Ohio Railroad Company's trains over the tracks described in the amended petition, and admitted that plaintiff's decedent walked upon said tracks and that he'

met his death thereon. Then avers, in a second defense that his death was caused solely by his own negligence and in the third defense that decedent was guilty of contributory negligence.

At the time that the trial judge passed upon the motion of defendant for directed verdict there were presented under the evidence two issues for his determination: (1) The status of plaintiff's decedent in the yards of defendant company, namely, whether an invitee, licensee or trespasser; (2) Whether or not he was chargeable with contributory negligence as a matter of law.

The first question was resolved in favor of the plaintiff, the Court holding that her decedent was an invitee. The second question was resolved in favor of the defendant company, the Court holding that plaintiff's decedent was chargeable with contributory negligence as a matter of law.

We do not purpose to restate the factual developments relating to the first question, but are content to say that the trial judge was correct in his determination. He had the right to conclude that at the time and place where plaintiff's decedent was struck by defendant's locomotive he was in the status of an invitee of the defendant company by virtue of the lease defining the rights of defendant and The B. & O., in the yards of defendant company, his employment with the B. & O. as engineer and because of the proof, that in the line of this employment it was appropriate that he inspect the tracks, right of way, and switches of the defendant company in the yards of said company, preparatory to taking a run as engineer between Newark and Cincinnati on the B. & O.

On the question of contributory negligence, the facts disclose that Porter had come to Columbus quite early on the morning of March 4, 1936; that he went to the H. V. tower and talked to a Mr. Hawkins who was in charge of the tower; said to him that he was going along the Big Four track to the west, probably as far as the B. & O. junction, a distance in all of about a quarter of a mile. At this time, Porter had in his possession a paper upon which was a drawing of the tracks in the vicinity of the tower, and made special inquiry about certain switches. Porter left the tower about 6:20 A. M. Two witnesses for the plaintiff, Jones and Broadus, saw Porter come down out of the tower and move westwardly along the main west track of defendant company toward the Olentangy bridge. Soon after Porter came down from the tower an eastbound freight train, consisting of locomotive, tender and 31 cars approached, and soon thereafter a light engine and tender moved westerly on the tracks of the Big Four. Broadus and Jones, moving west, heard the oncoming locomotive and stepped aside. It passed them, proceeded westwardly, and when it reached a point where the Neil track switch is joined to the westbound main track, it struck Porter. It is true that no witness actually saw the impact of the locomotive with the body of Porter, but no other logical inference is to be drawn but that the overhang of the locomotive struck Porter and killed him. At the moment that Porter was struck he was standing on the "Y" projecting from the main track and one of the witnesses says, was looking to the west. At the time and place were he was struck the eastbound freight was still moving, and the locomotive which struck Porter was moving parallel to the freight train when he was hit. When Porter's body was moved the papers which he had held, carrying sketches of the tracks and switches in the vicinity of the tower, were found near his body. The accident occurred at about 6:25 A. M., a period fixed as civil twilight, by one of the witnesses. It is testified that one could then see for a distance of several hundred feet. This witness, a weatherman, fixed the degree of visibility as sufficient to enable one to carry on his occupation. One of the witnesses said that the

locomotive had no lighted headlight; that no whistle nor bell was sounded as it approached Porter.

The question presented is whether or not under the latest pronouncement of the Supreme Court, namely, the 3rd proposition of the syllabus of **Hamden Lodge, etc. v The Ohio Fuel Gas Company, 127 Oh St 469**, reasonable minds can come to more than one conclusion respecting the negligence of plaintiff's decedent at the time and place where he was struck and killed. If but one conclusion can be reached and that is that Porter was negligent, then there can be no doubt that it was a proximate cause of his death.

Visualizing the situation with which Porter was confronted at the time that he was killed, we would readily say that whether or not the exercise of his sense of hearing would have prevented the accident is a question for factual determination and about which there could properly be a dispute. It is most probable that the moving eastbound freight train rumbled and rattled along the track and set up considerable din; that the oncoming westbound locomotive, without load, would run along smoothly and quietly, and that Porter, intent upon his work, might not have heard it as it approached. We cannot, however, say that reasonable minds may differ as to the effect upon Porter's safety had he seasonably used his sense of sight. The degree of visibility requires the inference that he could have seen the oncoming locomotive up the westbound track for a distance of several hundred feet. Porter was a railroad man of years of experience, appreciated the danger incident to his calling, knew the overhang of a locomotive and that proximity to a track within this distance would subject him to the danger of being struck. With this knowledge he took his position on the "Y", facing the west, which was in the opposite direction from which he would expect a train to approach ▆▆▆▆▆▆▆▆ on that track. How can it be said that had he seasonably looked he could not have seen the oncoming locomotive? Under the

law it has been held times without number that one about to go onto a railroad track is required not only to look but to look when it would be effective.

Attention must also be given to the question of the negligence of plaintiff's decedent in taking up his position on the switch just off the main track. If it be conceded that he had the right to inspect the track, the switches and the semaphores; even so, the necessity of walking the tracks, or standing upon the rails does not appear. Could he not have made all necessary investigation to acquaint himself with everything which he was required to know without placing himself on the tracks or in such proximity thereto as to be in a place of obvious danger?

It is our conclusion that the trial judge correctly instructed a verdict for the defendant because plaintiff's decedent was chargeable with contributory negligence as a matter of law.

We have been favored with an opinion of Judge Carpenter of the Erie County Court of Appeals in which his associates concurred, in the case of Pitts v The Pennsylvania R. R. Co., wherein it was held that an invitee of defendant railroad company who went on to and along the tracks of said company and was struck by one of its locomotives and injured had the right to go to the jury on the question of whether or not he was contributorily negligent. The plaintiff testified in this case that before he was struck he looked both ways and saw no oncoming train. However, that the train was coming and in close proximity to him just before he was struck seems obvious from the facts and would seem to refute the statement that he looked seasonably. The Supreme Court affirmed this judgment by a vote of three and three, one member not participating. This action had the effect ▆▆▆▆▆▆ ▆ of affirming the judgment in the case under immediate consideration, but is not especially helpful as precedent. In view of the many pronouncements of the Supreme Court defining the obligation of due

care in which all or a majority of its members have concurred, we hesitate to accept the Pitts case as controlling authority. We have particularly in mind the case of **C. D. & M. Railway v O'Day, 123 Oh St 638,** in which all members of the Court but one concurred. This decision was a reversal of a judgment of this Court of Appeals wherein we had held that the question of O'Day's negligence was one of fact. O'Day in an automobile regularly traversed the crossing where he was killed. Prior to this date the Railway Company had maintained a flasher signal at the crossing which operated only when cars were passing over the intersection of the pike with the railroad. O'Day moved along the pike and onto the crossing when he was struck by an oncoming car of defendant company. There was testimony that the flasher signal was not operating at the time. The jury returned a verdict for the plaintiff and answered two interrogatories to effect that O'Day, as he approached the track of the defendant company did not look to the south for any interurban car when he was far enough from the railroad track to stop his automobile before reaching the crossing, and that had he looked he would have seen the interurban car in time to stop his automobile in a place of safety. Upon the answers to these interrogatories the defendant company moved for judgment which the trial court denied. This Court affirmed the judgment of the Court of Common Pleas. The Supreme Court reversed and said that O'Day was chargeable with contributory negligence as a matter of law. The parallel in this case with the cited case is that had Porter looked to the east at any seasonable time he would have seen the oncoming locomotive and it must be said that he did not look; first, because had he looked he could have seen it, and had he done so would have saved himself; and second, one of plaintiff's witnesses said that he was looking to the west just before he was struck. The further parallel is that here plaintiff urges with much force that because of the

physical conditions the locomotive and freight train moving and paralleling each other, plaintiff's decedent, in the exercise of ordinary care, may not have noted the presence of the oncoming locomotive. In the O'Day case much was said to support the claim of the plaintiff that O'Day, having regularly driven over the crossing where he was killed, and having observed the operation of the flasher signal, was led to depend upon this signal and thereby lulled into a false sense of security.

We are of opinion that if the Supreme Court would not say that there was a factual question for the jury in the O'Day case, it could not say without reversing that case that there was a factual question for the jury as to contributory negligence of plaintiff's decedent in this case.

The judgment will be affirmed.

GEIGER and BARNES, JJ., concur.

**MOTION TO CERTIFY FOR CONFLICT**

No. 3076. Decided March 8, 1940.

BY THE COURT:

Submitted on motion of appellant to certify this case to the Supreme Court for the reason that the judgment is in conflict with the judgment pronounced upon the same question by the Court of Appeals of Erie County, namely the case of Pitts v The Pennsylvania Railroad Company.

We recognize that the judgment in the cited case in the Court of Appeals of Erie County is in conflict with our judgment in this case, but the judgment in the Erie County Court of Appeals has been superseded by the judg-

ment in the Supreme Court **136 Oh St 139.** It is as though the judgment of the Court of Appeals of Erie County had not been pronounced. The situation thus presented is not in our judgment one which requires or permits certification of conflict. If it did we would not have the slightest hesitation in granting the motion for certification of conflict.

The effect of our judgment is so obvious that no doubt the Supreme Court would take cognizance of it and act accordingly.

The motion will be overruled.

HORNBECK, PJ., GEIGER & BARNES, JJ., concur.